UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

TYJUAN GEE,

                Plaintiff,              Case No. 2:24-cv-150

v.                                      Honorable Maarten Vermaat

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]however, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant MDOC.

The Court will also dismiss, for failure to state a claim, any intended claims against the non-party individuals discussed in the complaint.

Further, the Court will dismiss the following claims against remaining Defendant Berry: (i) First Amendment retaliation claims and (ii) Eighth Amendment claim regarding the April 19, 2024, incident that occurred in the segregation shower.

Plaintiff's Eighth Amendment claim against Defendant Berry regarding the May 8, 2024, shakedown will remain in the case.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC and LMF Correctional Officer Jay Berry. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that on April 19, 2024, he was in the segregation shower drying off, and Defendant Berry "open[ed] the latch to the segregation shower."[2] (*Id.*, PageID.3.) Defendant Berry told Plaintiff to "hurry up and put that lil dick up." (*Id.*) In response, Plaintiff told Defendant Berry that Berry was not supposed "to open the shower latch while [Plaintiff was] in [t]here naked saying sexual things to [Plaintiff]." (*Id.*) Defendant Berry then "quickly closed the latch" and gave the handcuffs to a non-party staff member to use to transport Plaintiff. (*Id.*) Later that day, Plaintiff "ask[ed] for a grievance to report" the incident with Defendant Berry. (*Id.*)

On April 27, 2024, Plaintiff was using a cane because he had injured his leg, and on that date, he "was taken to the shower." (*Id.*, PageID.9.) When Plaintiff returned to his cell, non-party Resident Unit Manager Naeyaret told non-parties Staff Sergeant Humble and an unnamed staff member "to get [Plaintiff] for court." (*Id.*) These non-party staff members "told [Plaintiff] to cuff up from behind." (*Id.*) In response, Plaintiff advised them that he could not do so because he was using a cane. (*Id.*) Plaintiff states that "they never came back to take [Plaintiff] to court so . . . a guilty plea [was entered] by default." (*Id.*) At an unspecified time, non-party Resident Unit Manager Naeyaret came to Plaintiff's cell and stated: "I will make your time in segregation hard

---

[2] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's complaint.

4

for you . . . . if [you] keep putting in [Prison Rape Elimination Act (PREA)] grievances on [my] staff." (*Id.*) Thereafter, on April 28, 2024, Plaintiff "put [a] harassment and retaliation grievance in on [non-party Resident Unit Manager] Naeyaret." (*Id.*) Plaintiff also "wrote letters to the [non-party] warden and . . . no action was taken." (*Id.*)

On April 30, 2024, while the PREA investigation regarding the April 19, 2024, incident was ongoing, Defendant Berry came to Plaintiff's cell to transport Plaintiff to a mental health appointment. (*Id.*, PageID.3.) A non-party staff member had accompanied Defendant Berry to Plaintiff's cell, and Plaintiff told the non-party staff member that Plaintiff did not "trust [Berry]" and that Plaintiff had "a PREA investigation grievance in on [Berry]." (*Id.*) The non-party staff member "pretend[ed] like they had no knowledge of this and proceed[ed] to get the [hand]cuffs from [Defendant] Berry" to transport Plaintiff. (*Id.*)

Subsequently, on May 8, 2024, Defendant Berry was picking up trays in Plaintiff's unit, and Plaintiff asked Berry to "put [Plaintiff] down for yard." (*Id.*, PageID.9.) In response, Defendant Berry informed Plaintiff that he would "not be getting [his] yard [time]" and "smile[d] and walked away." (*Id.*) Plaintiff states that he "was on a seven day break and was allow[ed] to go to yard." (*Id.*, PageID.10.) Plaintiff believes that Defendant Berry "was not [supposed] to be working around [Plaintiff]" at that time. (*Id.*) Later that same day, May 8, 2024, Defendant Berry and non-party Correctional Officer Chinex came to Plaintiff's cell and told him "to get ready for court." (*Id.*) Plaintiff was handcuffed, and Defendant Berry "started to shake [Plaintiff] down" and "started to touch on [Plaintiff in] a sexual unwanted groping ma[nn]er," including "grab[bing] [Plaintiff's] penis area when [Berry] was touching [Plaintiff]." (*Id.*) Plaintiff states that he was "in pure fear of [his] life [be]cause this [wa]s the same officer [Plaintiff had] a PREA investigation in on." (*Id.*) Plaintiff asked non-party Correctional Officer Chinex why Defendant Berry was "touching

5

[Plaintiff] when [he] had a PREA out on [Berry]," and then Chinex took the handcuffs from Defendant Berry and Chinex walked Plaintiff to court. (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise claims under the First Amendment and Eighth Amendment. As relief, Plaintiff seeks monetary damages. (*Id.*, PageID.4.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Non-Parties Discussed in the Complaint

In Plaintiff's complaint, he discusses the actions of several non-party individuals. (*See* Compl., ECF No. 1, PageID.3, 8–10.) These individuals are not identified as Defendants in either the case caption of the complaint or the section of the form complaint where Plaintiff lists the Defendants in this suit. (*See id.*, PageID.1, 2.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action).

Accordingly, any intended claims against the non-party individuals discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

**B.  Defendant MDOC**

Plaintiff names the MDOC as a Defendant; however, Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.

Accordingly, Defendant MDOC and Plaintiff's claims against the MDOC will be dismissed.

**C.  Defendant Berry**

    **1.  First Amendment Retaliation Claims**

Plaintiff claims that Defendant Berry retaliated against him after he submitted a PREA grievance against Berry regarding the April 19, 2024, incident in which Defendant Berry "open[ed]

8

the latch to the segregation shower" while Plaintiff was in the shower. (Compl., ECF No. 1, PageID.3, 9–10.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a. Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references filing a PREA grievance regarding Defendant Berry's actions on April 19, 2024. (Compl., ECF No. 1, PageID.3.) At this stage of the proceedings, Plaintiff has alleged sufficient facts to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

### b. Adverse Action

As to the second element of a retaliation claim, although not specifically articulated by Plaintiff, it appears that Plaintiff claims that Defendant Berry retaliated against him by denying Plaintiff yard time on May 8, 2024, and touching Plaintiff in "a sexual unwanted groping ma[nn]er" while conducting a shakedown later that same day. (*See id.*, PageID.9–10.)

As to Defendant Berry's one-time denial of Plaintiff's yard time on May 8, 2024, courts have held that under certain circumstances denying a prisoner access to yard time may constitute an adverse action; however, courts routinely hold that a single incident in which an inmate is denied yard time does not constitute adverse action. *See, e.g.*, *Pollard v. Clark*, No. 1:20-CV-00194-SPB-RAL, 2021 WL 5911055, at *7 (W.D. Pa. Nov. 4, 2021) (citations omitted), *R&R adopted*, No. CV 20-194, 2021 WL 5909807 (W.D. Pa. Dec. 14, 2021); *cf. Perry v. McDaniel*, No. 4:20-CV-00052-JM-JJV, 2022 WL 952689, at *6 (E.D. Ark. Mar. 17, 2022) (concluding that "[a]single incident of cutting an inmate's outdoor recreation time from 90 minutes to 60 minutes is not the type of adverse action that would chill a prisoner of ordinary firmness from filing a grievance" (citations omitted)), *R&R adopted*, No. 4:20-CV-00052-JM-JJV, 2022 WL 947333 (E.D. Ark. Mar. 29, 2022), *aff'd*, No. 22-1981, 2022 WL 16843142 (8th Cir. Sept. 8, 2022). Here, under the circumstances alleged by Plaintiff, the Court concludes that this one-time denial of yard time did not constitute an adverse action. Therefore, Plaintiff's First Amendment retaliation claim against Defendant Berry premised on Berry's one-time denial of yard time will be dismissed.

As to Plaintiff's assertion that Defendant Berry touched Plaintiff in "a sexual unwanted groping ma[nn]er" during a shakedown, the Court assumes, without deciding, that such an action would constitute adverse action.

### c.   Retaliatory Motive

With respect to the third element of a retaliation claim, as explained below, Plaintiff fails to allege sufficient facts to show that Defendant Berry took the alleged adverse action against Plaintiff because Plaintiff had engaged in protected conduct.

Plaintiff alleges that he filed a PREA grievance against Defendant Berry regarding the April 19, 2024, incident where Berry saw Plaintiff naked in the shower, and then Plaintiff alleges that Defendant Berry conducted a shakedown of Plaintiff's person on May 8, 2024, during which

10

Defendant Berry touched Plaintiff in "a sexual unwanted groping ma[nn]er." (*See* Compl., ECF No. 1, PageID.3, 10.) The order of these events suggests that there was temporal proximity between them because the April 19, 2024, incident preceded the May 8, 2024, incident; however, although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Here, besides the temporal proximity discussed above, Plaintiff fails to allege any other facts to suggest that Defendant Berry was motivated by Plaintiff's prior protected conduct when he conducted the shakedown of Plaintiff's person on May 8, 2024. Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient."). And, "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C.

11

§ 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

Accordingly, for all of the reasons set forth above, Plaintiff's First Amendment retaliation claims against Defendant Berry will be dismissed.

### 2.     Eighth Amendment Claims

Plaintiff claims that he had two interactions with Defendant Berry—one on April 19, 2024, and the other on May 8, 2024—in which Defendant Berry either made a sexual comment or touched Plaintiff in a sexual manner. (Compl., ECF No. 1, PageID.3, 10.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). In the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's

buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Rafferty*, 915 F.3d at 1095–96. The *Rafferty* court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

### a.     April 19, 2024, Incident in the Shower

Plaintiff alleges that on April 19, 2024, he was in the segregation shower drying off, and Defendant Berry "open[ed] the latch to the segregation shower." (Compl., ECF No. 1, PageID.3.) Defendant Berry told Plaintiff to "hurry up and put that lil dick up." (*Id.*) In response, Plaintiff told Defendant Berry that Berry was not supposed "to open the shower latch while [Plaintiff was] in [t]here naked saying sexual things to [Plaintiff]." (*Id.*) Defendant Berry then "quickly closed the latch" and gave the handcuffs to a non-party staff member to use to transport Plaintiff. (*Id.*)

The Court does not minimize Plaintiff's experience, however, *Rafferty*, is distinguishable from Plaintiff's claim regarding the April 19, 2024, incident. Specifically, nothing in the complaint suggests that Defendant Berry physically touched Plaintiff on April 19, 2024, and although Defendant Berry's comment was offensive and unprofessional, under the circumstances alleged

13

by Plaintiff, Defendant Berry's actions do not evidence the sort of coercive sexual demand at issue in *Rafferty*. *See Rafferty*, 915 F.3d at 1095–96; *Ivey*, 832 F.2d at 955 (holding that allegations of verbal harassment or taunts by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Accordingly, any intended Eighth Amendment claim premised on the April 19, 2024, incident with Defendant Berry will be dismissed.

### b. May 8, 2024, Shakedown

Plaintiff next alleges that on May 8, 2024, Plaintiff was handcuffed because he was going to be transported to court. (Compl., ECF No. 1, PageID.10.) Defendant Berry "started to shake [Plaintiff] down" and "started to touch on [Plaintiff in] a sexual unwanted groping ma[nn]er," including "grab[bing] [Plaintiff's] penis area when [Berry] was touching [Plaintiff]." (*Id.*) Plaintiff states that he was "in pure fear of [his] life [be]cause this [wa]s the same officer [he had] a PREA investigation in on." (*Id.*)

The Court notes that a pat-down or shakedown search is necessarily intrusive, even sexually intrusive. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court noted the following was an "apt description" of such a search: "the officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet." *Id.* at 17 n.13.

Nonetheless, at this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although Plaintiff's allegations lack some specificity as to the exact nature of the "sexual unwanted groping," and he has by no means proven his claim, at this early stage of the proceedings, the Court will not dismiss Plaintiff's Eighth

14

Amendment claim against Defendant Berry regarding the May 8, 2024, shakedown. *But see Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not necessarily rise to the level of a constitutional violation).

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant MDOC will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, any intended claims against the non-party individuals discussed in the complaint. Further, the Court will dismiss the following claims against remaining Defendant Berry: (i) First Amendment retaliation claims and (ii) Eighth Amendment claim regarding the April 19, 2024, incident that occurred in the segregation shower.

Plaintiff's Eighth Amendment claim against Defendant Berry regarding the May 8, 2024, shakedown remains in the case.

An order consistent with this opinion will be entered.

Dated:   October 28, 2024                         /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge